IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION

TIMOTHY COUCH,                    )
                                  )
               Plaintiff,         )
                                  )
     v.                           )    No. 05 C 963
                                  )
VILLAGE OF DIXMOOR, et al.,       )
                                  )
               Defendants.        )

                  MEMORANDUM OPINION AND ORDER

     After this Court's September 7, 2006 entry of the Final Pretrial Order ("FPTO") that had been jointly submitted by counsel for the litigants, each side--as directed--tendered a set of motions in limine:  14 on behalf of plaintiff Timothy Couch ("Couch") and seven on behalf of defendants Mitchell Davis ("Davis") and Emir King ("King").  Defense counsel then responded to all the plaintiff's motions, while the attached October 27 letter from plaintiff's counsel declined to file any response to the defense motions.  This memorandum opinion and order will address the motions in as brief compass as possible.

                         Couch's Motions

     At the outset it should be noted that defense counsel-- repeatedly and quite properly--criticizes Couch's counsel's persistent reliance on Illinois state court authority rather than on federal rules and caselaw.  In that respect, Couch's lawyer should of course be aware that all evidentiary matters are governed instead by the Federal Rules of Evidence ("Rules").

That said, however, it is true that on some matters--certain elements of damages, for example--the universality of the principles involved makes Illinois caselaw (like caselaw elsewhere) instructive, though not controlling. To that extent the following discussion may draw on such state court caselaw. Now on to the motions themselves.

Motion 1 seeks to bar evidence of Couch's conviction for drug possession some years back on the ground that it is not a crime of "dishonesty" and involves no "false statement" (see Rule 609(a)(2)). In response, defense counsel is quite correct that Rule 609(a)(1) renders evidence of such prior convictions admissible--although that is said to be "subject to Rule 403." But the vigor with which defense counsel urges the matter calls to mind our Court of Appeals' caveat in <u>Campbell v. Greer</u>, 831 F.2d 700, 707 (7th Cir. 1987):

> All this is not to say that the opposing party may harp on the witness's crime, parade it lovingly before the jury in all its gruesome details, and thereby shift the focus of attention from the events at issue in the present case to the witness's conviction in a previous case. He may not.

During this Court's extended tenure on the Judicial Conference's Advisory Committee on the Rules of Evidence, including three years as its Chairman, the Committee had serious concerns as to the potential for "unfair prejudice" (Rule 403) that Judge Posner has identified in the just-quoted admonition. In this instance the jury will hear a good deal of much-more-

2

closely-related evidence adverse to Couch (more of this later), so that the heaping of Pelion upon Ossa by adding evidence of an earlier conviction--one that really bears no particular link to his credibility vel non--does bring Rule 403 into play. Accordingly Motion 1 is granted.

Motion 2 asks that evidence of the events leading up to Couch's arrest, as well as the testimony of Nicholas Christou ("Christou"), be withheld from the jury. On that score, however, the pre-arrest events are closely linked and plainly relevant to Couch's excessive force claim, and Christou is described in defendants' response as a far more significant occurrence witness than the motion represents. Motion 2 is denied.

Motion 3 would seek to have evidence of Couch's alcohol consumption and drug ingestion barred from the trial. Again defendants' response is far more convincing--without that evidence, defendants' presentation of their plausible theory of the case would be seriously impaired.[1] Motion 3 is denied.

Motion 4 seeks to exclude police reports, this time mistakenly claiming inadmissibility pursuant to 625 ILCS 5/11-412. Although defense counsel is entirely correct in pointing to the Rules instead, this Court sees no predicate for the report

---

[1] This Court is not of course subscribing to either side's version of events in any of these rulings. Instead the underlying principle is that each side must have a fair opportunity to present his or their version.

authored by King to go to the jury. After all, King will be testifying himself, and his version of events will be conveyed to the jury directly rather than through a summary on paper (though his report may perhaps be used by him if necessary to refresh some failed recollection). In sum, this Court does not subscribe to defendants' position that the motion is premature--instead Motion 4 is granted, subject to possible limited review of the matter depending on how the trial plays out.

Motion 5 asks that any "awards or accommodations" (sic--counsel must mean "commendations") received by King, as well as the possible absence of prior police misconduct charges against him, be excluded. Defense counsel's response asserts no objection "provided the motion applies equally to any prior acts evidence against the defendants." This Court grants Motion 5 in its more limited form, without any such proviso--it is too early to determine whether defense counsel's quoted hedge applies.

Motion 6 asks to bar Couch's post-occurrence arrest and conviction on burglary charges, resulting in a probationary sentence. What was said earlier as to Motion 1 applies here as well--the balancing directed by Rule 403, under the circumstances of this case, calls for granting Motion 6.

Motion 7 is puzzling--it seeks to bar evidence of any prior

injuries suffered by Couch.² That effort is puzzling precisely because, as n.2 suggests, the presence of a preexisting condition can cut both ways.

Anyone with any experience in personal injury litigation is familiar with the principle that a tortfeasor takes the claimed victim as he or she finds that victim--the familiar "eggshell skull" phenomenon. In this instance such cases as <u>Reising v. United States</u>, 60 F.3d 1241, 1243-44 (7th Cir. 1995) and <u>Avitia v. Metro. Club of Chicago, Inc.</u>, 49 F.3d 1219, 1228 (7th Cir. 1995) show why prior injuries may indeed be relevant. Motion 7 is denied.

Motion 8, again citing only Illinois state court cases, asks that evidence of any prior accidents, claims or losses be barred. Defense counsel misreads that motion as seeking (for a second time) to keep Christou's testimony out of the case, a view that this Court views as contrary to the plain language and meaning of the motion. Because defense counsel properly voices no other objection to Motion 8, which is entirely sound, it is granted.

---

² Defense counsel's attack on the motion's citation of <u>Voykin v. Estate of DeBoer</u>, 192 Ill.2d 49, 733 N.E.2d 1275 (2000), by pointing to <u>Ueland v. United States</u>, 291 F.3d 993, 997-98 (7th Cir. 2002) as purportedly disavowing <u>Voykin</u>, is misconceived. In fact <u>Ueland</u> acknowledged that the <u>substantive</u> rules in that case came from Illinois law, so that the <u>Voykin</u> holding was indeed relevant there. In this instance, as the text here reflects, any prior injuries bear both on causation and on damages, substantive issues as to which (as suggested earlier) the principles of law are pretty much universal.

Motion 9 once more points to Illinois caselaw to urge that no mention be made as to the non-income-taxability of any recovery by Couch. Though defense counsel has cited In re Air Crash Disaster, 701 F.2d 1189 (7th Cir. 1983), by far the better reference is to the later appeal in that same case (803 F.3d 304, 313-14 (7th Cir. 1986)), which expressly confirmed that "the federal rule that the jury should be instructed that its award is not subject to federal income taxation is a matter of federal common law" (id. at 314). Motion 9 is denied.

Motion 10 asks to bar evidence of the parties' "pecuniary circumstances." Defendants offer no objection, and the motion is granted.

Motion 11 seeks to keep out of the case evidence as to "plaintiff's motives for filing suit." Defense counsel's response purports not to understand that motion, expressing reservations because "[d]efendants are certainly free to argue that plaintiff is seeking money for injuries that were not caused by any wrongdoing of the defendants, as that is their entire theory of the case." That of course is very different from an argument that can impugn the motives of any plaintiff for doing what the law not only permits but encourages: the pursuit of his or her perceived rights through litigation. Motion 11 is granted.

Motion 12 challenges the admissibility of what are called

6

"certain arguments regarding plaintiff's request for damages." Here defense counsel correctly responds that this motion is more appropriately to be addressed in the matrix of the trial itself, when it will be possible to deal with the actual evidence and what arguments may be appropriate in that light. Motion 12 is denied.

Motion 13 seeks to bar evidence of collateral source benefits, as to which defendants raise no objection. Their corollary request that the motion "be applicable to all parties" makes no sense at all, and Motion 13 is granted as stated.

Finally, Motion 14 asks to exclude non-party witnesses from the courtroom. Again defendants offer no objection--and this time their request for reciprocal treatment is appropriate. Motion 14 is granted.

### Davis-King Motions

Even though (as stated earlier) Couch's counsel has chosen not to respond to the defense motions, this Court is not of course bound by that choice. It has therefore properly reviewed each motion for its substantive content, with no comment required here unless otherwise indicated.

Motion 1, which seeks to exclude evidence or argument as to Davis' supervisory liability under respondeat superior principles, rests on the seminal opinion in Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 691 (1978).

7

That motion is granted, and this Court will hold Couch to a required demonstration--if one can be made--that would allow a reasonable jury to find some direct (not vicarious) responsibility on Davis' part.

Motion 2, to bar undisclosed opinion testimony, is granted. Indeed, that unexceptionable requirement will apply against defendants as well.

Motion 3, to bar lay opinion testimony as to the cause of Couch's injuries, is also granted. But that bar does not of course preclude lay witnesses from offering such testimony (for example) as their observation of the absence of any injury before the incident at issue in this case.

Motion 4, which seeks to bar evidence of prior lawsuits against the Village of Dixmoor or any of its police officers, is granted. No view is expressed here as to the possibility--undisclosed by the motion and necessarily undisclosed by Couch's silence in response--that some litigation against King could have placed Davis on some type of notice that might bear on the latter's potential for direct liability.

Motion 5 asks that any evidence or argument as to King's prior employment reviews be barred. That motion is also granted on the assumption that nothing in those reviews is probative as to Davis' potential liability as outlined earlier--and as to King himself, Rule 404(b) would appear to bar such evidence in the

absence of any further information.

Motion 6 seeks to bar evidence as to any insurance coverage. That motion is granted, but defense counsel is cautioned that if any reference were to be made at trial to the claimed limited resources of Davis or King that might consequently impact on a potential damages award, this issue might have to be reexamined for counterbalance purposes.

Finally, Motion 7 properly seeks to bar documents and witnesses not previously produced. It is granted, and this provision will also be applied reciprocally.

## Conclusion

In summary, for the reasons stated in this memorandum opinion and order:

1. Couch's Motions 1, 5, 6, 8, 10, 11, 13 and 14 are granted (the last of those on a reciprocal basis), while Motions 2, 3, 7 and 9 are denied. Motion 4 is granted, subject to possible later review, while Motion 12 is denied but may be reasserted at trial.

2. Davis-King Motions 2 and 7 are granted (both reciprocally), while Motions 1, 3, 4, 5 and 6 are granted with qualifying explanations.

With all motions in limine now having been resolved, this Court will set the case for trial (for which purpose the parties are to comply with the provisions embodied in the memorandum order that

was entered contemporaneously with the FPTO).

                                         _____
                                         Milton I. Shadur
                                         Senior United States District Judge

Date:  November 27, 2006